DETOX INDUSTRIES, INC., Appellant,

v.

James GULLETT, Appellee.

No. 01–88–00920–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 18, 1989.

W. Richard Ellis, III, P.C., Kathryn A. Carpenter, McCulloch, Ellis & Payne, Houston, for appellant.

Kenneth M. Morris, Houston, for appellee.

Before SAM BASS, COHEN and DUNN, JJ.

## OPINION

SAM BASS, Justice.

The trial court entered a turnover order directing Detox Industries, Inc. ("Detox"), to cancel a stock certificate in the name of Ernest N. Dardas and reissue the certificate in the name of a court-appointed receiver. The receiver was directed to deliver the reissued certificate to any sheriff or constable in Harris County, Texas, to be sold at an execution sale to satisfy, in whole or in part, a judgment in favor of James Gullett against Ernest Dardas. Detox appeals.

We reverse and render.

Gullett obtained a valid judgment against Thomas A. Dardas in Cause No. 85–61519 and a separate judgment against Ernest Dardas in Cause No. 85–61519–F. Gullett filed an application for turnover relief, temporary restraining order, and temporary injunction in an effort to obtain satisfaction of his judgments.

The trial court held an evidentiary hearing on Gullett's application and issued a temporary injunction and appointed a receiver. Gullett offered evidence at the hearing to show: that he has an unsatisfied judgment against Tom Dardas and his son, Ernest Dardas; Tom Dardas is the president and chief executive officer of Detox; prior to January 5, 1987, Tom Dardas was the owner of 383,159 shares of common stock of Detox; Tom Dardas has since transferred these shares of stock to Ernest Dardas; Tom Dardas retains a security interest in the shares; Tom Dardas testified that further transfer of the shares is restricted by a legend on the certificate representing ownership of the shares; and, Ernest Dardas was not served with citation and was not before the court in this proceeding.

On August 5, 1988, the receiver filed the First Report of Receiver indicating that Tom Dardas has no significant assets to satisfy the judgment, and that the receiver is unaware of any assets of Ernest Dardas that are available for execution, except the shares of stock he holds in Detox. Because Ernest Dardas cannot be located, the receiver suggested ordering Detox to cancel the shares of stock issued in the name of Ernest Dardas, issue a new certificate in the name of the receiver, and deliver the new share certificate to the appropriate sheriff or constable for execution sale. On September 9, 1988, the trial court signed an order requiring that the reissued stock certificates be turned over to the receiver. The court then signed an order on September 12th requiring a supersedeas bond in the amount of $160,000 to suspend execution prior to an appeal being taken in this matter by Detox Industries, Inc. No findings of fact or conclusions of law are included in the transcript.

Appellant claims in the first point of error that the trial court erred in ordering appellant to cancel the stock certificate owned by Ernest Dardas and to reissue the certificate in the name of the receiver. The appellant claims the trial court's order is erroneous because the order was not authorized by Tex.Bus. & Com.Code Ann. § 8.317 (Vernon Supp.1989) or Tex.Civ.

Prac. & Rem.Code Ann. § 31.002 (Vernon 1986), because there was no evidence that Detox Industries was the owner or was in possession of the stock certificates, and because appellee failed to prove that the stock certificates were held or owned by Ernest Dardas at the time of the court's order.

Gullett submits that the trial court had authority pursuant to, and in accordance with Tex.Civ.Prac. & Rem.Code Ann. § 31.002 (the "turnover statute") and Tex. Bus. & Com.Code Ann. § 8.317(f) to enter the order about which Detox now complains. The turnover statute provides in pertinent part:

> (a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment *if the judgment debtor owns property,* including present or future rights to property that:
>
> (1) cannot readily be attached or levied on by ordinary legal process; and
>
> (2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.
>
> (b) The court may:
>
> (1) order the *judgment debtor* to turn over nonexempt property that is in the *debtor's possession* or is subject to the *debtor's control,* together with all documents or records related to the property, to a designated sheriff or constable for execution;
>
> (2) otherwise apply the property to the satisfaction of the judgment; or
>
> (3) appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment.

Texas Bus. & Com. Code Ann. § 8.317 (Vernon Supp.1989) provides in pertinent part:

> (a) Subject to the exceptions in Subsections (c) and (d), no attachment or levy upon a certificated security or any share or other interest represented thereby which is outstanding is valid until the security is actually seized by the officer making the attachment or levy....
>
> (f) A creditor whose debtor is the owner of a security is entitled to aid from the courts of appropriate jurisdiction, by injunction or otherwise, in reaching the security or in satisfying the claim by means allowed by law or in equity in regard to property that cannot readily be reached by ordinary legal process.

James Gullett was a "judgment creditor" and Thomas and Ernest Dardas were "judgment debtors" within the meaning of Tex.Civ.Prac. & Rem.Code Ann. § 31.002. It is undisputed that Detox Industries is not a judgment debtor.

*First National Bank v. Dyes,* 638 S.W. 2d 957 (Tex.App.—Eastland 1982, no writ), holds that the relief provided by § 8.317 does not authorize a district court to order cancellation of an original stock certificate and issue a new certificate in the creditor's name, in view of the fact that neither the stock transfer agent nor the judgment debtor was the owner or holder of the original certificate. The court held that Tex.Bus. & Com.Code Ann. § 8.317(b)[1] affords a creditor a means of gaining control of a certificate from the owner or holder thereof, not the issuer. Furthermore, the court held the section provides no right to the issuance of a new certificate when the old one cannot be reached. *See* 638 S.W.2d at 959.

The comments on section 8.317 explain the need for possession of a stock certificate before cancellation and:

> In dealing with investment securities the instrument itself is the vital thing and therefore a valid levy cannot be made

---

1. The appellee asserts *Dyes* is not controlling since it was decided before the enactment of Tex.Bus. & Com.Code Ann. § 8.317(f), which was "added specifically to expand the remedies of creditors to enable them to cut through the type of premeditated [sic], calculated efforts (demonstrated here) of debtors to hide physical possession of a stock certificate and then claim that a creditor can do nothing." Actually, § 8.317(b) was merely *relettered* as § 8.317(f) in 1983 and there were no substantive changes to this section, nor is there any evidence in the comments to the amendment to support appellee's contentions.

unless all possibility of the security finding its way into a transferee's hands has been removed. This can be accomplished only when the security has been reduced to possession by a public officer or by the issuer. A holder who has been enjoined can still transfer the security in contempt of court.... Therefore, although injunctive relief is provided in subsection (2) so that creditors may use this method to gain control of the security, the security itself must be reached to constitute a proper levy.

*First Nat'l Bank v. Dyes,* 638 S.W.2d at 959. The requirement that a corporation have possession of the stock certificate before it cancels the certificate and issues a new one is sound. Without the shares of stock, the corporation does not know if the shares have been transferred by the purchaser. *Id.* at 959. Moreover, "an attachment filed at the issuer's office against the shares represented by the security on the books is ineffective unless the security itself has been surrendered to the issuer...." Tex.Bus. & Com.Code Ann. § 8.317 comment 2 (Tex.UCC) (Vernon 1968). Consequently, Section 8.317 "prevents [attaching or levying creditors] from securing rights paramount to those of purchasers who have actual possession of the security...." Tex.Bus. & Com.Code Ann. § 8.317 comment 3 (Tex.UCC) (Vernon 1968).[2]

In *United Bank Metro v. Plains Overseas Group,* 670 S.W.2d 281 (Tex.App.—Houston [1st Dist.] 1983, no writ), this Court held that relief under the turnover statute cannot be had against one who is not a judgment debtor. In *United Bank,* suit was brought against two individuals, Musselwhite and Grafton, resulting in judgments for money damages. Suit was then brought against the two individuals for various relief including injunction, receivership, and turnover of assets. Also sued for postjudgment relief were Plain Overseas Group, Inc. ("POGI"), and Plain

Overseas Export, Inc. ("POEI"). Neither POGI or POEI were judgment debtors of United Bank Metro, nor had they been parties to the litigation. The relief sought under the turnover statute was that both of these corporations should be treated as judgment debtors, because they were merely alter egos of Musselwhite and Grafton, and they were being used to conceal and fraudulently transfer the assets of the individual judgment debtors. The court disagreed and held that the language in the turnover statute authorizes a remedy only against the judgment debtor. *See id.* at 283.

In *Norsul Oil & Mining Ltd. v. Commercial Equipment Leasing Co.,* 703 S.W.2d 345 (Tex.App.—San Antonio 1985, no writ), however, the court considered and rejected the same argument advanced by Detox here that a turnover order cannot be issued against anyone other than a judgment debtor. The judgment creditor in the case was Commercial Equipment Leasing Company (Comelco), and the judgment debtors were Fred Forster, Jr., Fred Forster, III, and Forster Drilling Company, Inc. The turnover order directed that Norsul Oil & Mining Ltd. and its president, Wayne Fowler, forward to the district court 220,000 shares of Norsul stock that had been sent to Norsul by Fred Forster, Jr. sometime before the turnover proceedings. The question before the court was ownership: whether the shares of Norsul had actually been assigned and conveyed to Norsul or whether the Forsters and their company were the owners of the stock. The court found that the shares were, in fact, still owned by Forster Drilling Co.

Based upon the evidence before it, the trial court found that the non-exempt property (shares of stock) was owned by the judgment debtor (Forster Drilling). Although a third party, *Norsul, held the shares,* they were subject to the possession or control of the owner, the judgment debtor. Although a third party

---

2. We deem it noteworthy that § 8.317 allows legal process upon a debtor's interest in a security possessed or registered in the name of a secured party, subsection (c), or in possession of or registered in the name of a financial intermediary, subsection (d). The legislature added these provisions by amendment in 1983 in order to expand creditor's rights, but it did not authorize an order like the one here.

retains the property, if it is shown to be nonexempt, owned by a judgment debtor and subject to the debtor's possession or control, the trial court may issue and enforce its turnover order.

*Norsul*, 703 S.W.2d at 349 (emphasis added).

In the instant case, Detox does not hold the stock certificate. The evidence shows that Ernest Dardas is the holder and record owner of the shares. The limited holding of *Norsul* demonstrates that a turnover order can be directed to a person other than simply a judgment debtor *only if the person possesses the property.*

In *First City National Bank of Beaumont v. Phelan*, 718 S.W.2d 402 (Tex.App. —Beaumont 1986, writ ref'd n.r.e.), the court also allowed turnover relief against a party who was not a "judgment debtor." In *First City*, a dissolution decree directed the husband to pay the wife child support from distributions of a non-discretionary spendthrift trust of which he was income beneficiary. The trial court granted the former wife's application for collection of judgment for past-due support and directed the trustees of the bank to make the trust income distributions directly to the wife. The trustees appealed contending that they were not judgment debtors and that the turnover statutes are so designed as to allow only a judgment creditor to obtain the aid of a court of appropriate jurisdiction through injunction or other means in order to reach the property in satisfaction of a judgment against a judgment debtor. *See id.* at 405. The court of appeals held that the statute "was designed so that a judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction of a judgment, including present or future rights to property." *Id.* The court held that the husband was a judgment debtor and the trustees were parties to the divorce action, which was a sufficient connection to afford the wife the substantive relief sought. In our case, although Detox Industries was also joined as a party to the action against Thomas Dardas, the *First City* case does not pose the same problems that are inherent in stock transfers such as *Dyes*.

In *Childre v. Great Southwest Life Ins. Co.*, 700 S.W.2d 284 (Tex.App.—Dallas 1985, no writ), a postjudgment relief action arose from an award of monetary damages to the Corporation of the Great Southwest and Great Southwest Life Insurance Company against Childre, the former Chairman of the Board, President, and CEO of the corporations. Evidence was presented at the hearing that the stock was in the hands of a third party and being held out of the state. *See Childre*, 700 S.W.2d at 288. The court granted the corporations' application for postjudgment relief and for appointment of a receiver pursuant to the turnover statute, and ordered that any certificates representing stock in either of those corporations held by Childre be held in constructive trust for the benefit of the corporations. *See id.*

We conclude that *Norsul, First City, United Bank Metro, Dyes,* and *Childre* apply to this case and that Detox is not a judgment debtor, nor is it the owner or in possession of the stock certificate. The trial court improperly ordered Detox to cancel the certificate of stock that was not in its possession or within the reach of the court.

We sustain appellant's first point of error.

In its second point of error, appellant claims the trial court abused its discretion in staying its order "only upon the payment of a Supersedeas Bond by Defendant, Detox Industries, Inc. or someone on its behalf in the amount of not less than $160,-000 . . . ." Since we have sustained the first point of error, we need not decide this issue.

We reverse the trial court's judgment and render judgment that appellee take nothing.

COHEN, Justice, concurring.

I agree that our statutes do not authorize the trial court's order. This is unfortunate. These statutes do not give this judgment creditor the aid he needs, while they protect two parties who do not need protec-

tion—the issuing corporation and any potential bona fide purchaser.

Detox argues that if the trial court's order were upheld, it might be liable to a bona fide purchaser as a result of complying with the order. It need have no fear. The likelihood that it would be held liable for complying with a court order that it resisted in good faith is, to say the least, remote, and a bona fide purchaser presumably would have a title superior to that of a purchaser at a foreclosure sale.

While these considerations may make it desirable to afford Gullett his relief, that is different from having a statute that does so. Instead, we have two statutes that regulate this area and do not do so. We are bound to follow them, even though it requires us to set aside an order that seems just and prudent on the record before us.